# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50161-9-II |
| Respondent, | |
| v. | |
| MELFORD JOHN WARREN, JR., | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Melford Warren, Jr. appeals his convictions for two counts of sexual exploitation of a minor. Warren argues that insufficient evidence was presented at trial to convict him of the two charges. We disagree because sufficient evidence was presented at trial to convince a rational trier of fact that Warren committed the crimes beyond a reasonable doubt.

## FACTS

Warren is the father of twelve children, including GPJ and her brother, GMW.[1] GPJ was born on July 5, 2004. In August 2014, one of the children suffered an injury to her arm and was taken to the hospital. The examining physician found a complete fracture of her bone resulting from a considerable force and determined that the injury did not match the explanation given to him by the mother. The physician reported his suspicions to law enforcement.

---

[1] We use initials to protect the witness's identity. General Order 2011-1 of Division II, available at: http://www.courts.wa.gov/appellate_trial_courts/.

In September 2014, a Department of Natural Resources officer responded to a telephone call regarding unsupervised children at a campground. Several hours after the children were taken into protective custody, Warren arrived at the campsite and was arrested on an outstanding warrant. After being taken into protective custody, the children began disclosing abuse by Warren.

On December 19, 2016, the State, by amended information, charged Warren with twenty-two crimes related to his domestic abuse of his children. Two of the crimes charged were for two counts of sexual exploitation of a minor, counts IV and VI, involving GPJ and GMW. Counts IV and VI both alleged that

> [o]n or about or between September 1, 2013 and September 15, 2014, in the County of Kitsap, State of Washington, [Warren] compelled a minor, to wit: [GPJ], and/or being [sic] a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct knowing that the conduct would be photographed or be a part of a live performance . . . .

Clerk's Papers (CP) at 823, 825.

At trial, Warren's children testified about his physical and sexual abuse of them. The sexual abuse included at least two occasions when Warren directed GPJ's brother, GMW, to have sex with her.

On the first occasion, GMW testified that Warren wanted to see if he or his sister, GPJ, "knew anything" about sex. 14 Verbatim Report of Proceedings (VRP) at 2268. GMW stated that Warren told him to have sex with GPJ, instructed him on how to have sex with her, and stood in the room watching as the two siblings attempted to have sex. Warren was telling "[GMW] what to do and how to do it." 14 VRP at 2269. GMW stated that he attempted to follow Warren's instructions. GPJ also testified that Warren made her take off her pants and directed GMW to have sex with her, but that GMW could not get his penis in her vagina, although he did touch her vagina.

2

On the second occasion, GMW testified that Warren was mad at GPJ and told GMW "to rape his sister." 14 VRP at 2271. Warren again watched and instructed GMW how to put his penis into GPJ and how to "hump her." 14 VRP at 2271. After telling GMW to stop, Warren complained that GMW did not do it right and punched him. GPJ also testified that the second time was similar to the first time, Warren was in the room directing GMW to have sex with her. She testified that GMW's genitals touched her vagina but that "it did not go inside her." 13 VRP at 2039-40.

At the conclusion of the trial testimony, the trial court instructed the jury that "[a] person is guilty of sexual exploitation of a minor if the person being a parent permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or will be part of a live performance." CP at 864. The trial court also gave an instruction defining "live performance" as "any play, show, skit, dance, or other exhibition performed or presented to or before an audience of one or more." CP at 869.

The jury found Warren guilty of fifteen of the twenty-two charged crimes involving domestic abuse of his children. Warren was sentenced to a total of 1710 months. Warren appeals his convictions for two counts of the sexual exploitation of a minor, counts IV and VI, involving GPJ and GMW.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Warren argues that the convictions for the two counts of the sexual exploitation of a minor, counts IV and VI, should be reversed. He argues that the evidence at trial was insufficient to convict him because (1) a person needs to have committed an act under subsections (a) or (b) of

the sexual exploitation statute, RCW 9.68A.040(1)(c), in order to violate the statute—his actions did not, and (2) his conduct did not meet the statutory definition of a "live performance." We disagree.

## A.  LEGAL PRINCIPLES

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any reasonable trier of fact to find the essential elements of the crime beyond a reasonable doubt.  *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015).  A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a juror can draw from that evidence.  *Condon*, 182 Wn.2d at 314.  "All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).  Circumstantial and direct evidence are equally reliable.  *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015).  This court defers "to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."  *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

## B.  SEXUAL EXPLOITATION OF A MINOR

Warren argues that in order to sustain a conviction under RCW 9.68A.040(1)(c), a person needs to have committed an act under subsection (a) or (b) of that statute and the evidence at trial was insufficient to sustain his convictions on counts IV and VI.

Here, the State charged Warren with violations of RCW 9.68A.040(1)(c) and instructed the jury on the offense.  RCW 9.68A.040(1) provides:

(1) A person is guilty of sexual exploitation of a minor if the person:

4

(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;

(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or

(c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.

In *State v. Chester*, the jury convicted the defendant of sexual exploitation of a minor for hiding a video camera under his 14 year-old stepdaughter's bed, and then filming her while she was undressing. 82 Wn. App. 422, 424, 918 P.2d 514 (1996), *aff'd*, 133 Wn.2d 15, 940 P.2d 1374 (1997). The State charged the defendant under RCW 9.68A.041(1)(b) and (c). *Chester*, 82 Wn. App. at 425.

A panel of this court reversed the conviction because there was no evidence that the defendant "took an affirmative act to cause his daughter's conduct under either" RCW 9.68A.040(1)(b) or (1)(c). *Chester*, 82 Wn. App. at 428. The court held that

[t]o be a criminal act, there must be evidence that someone other than the minor induced the minor's behavior. [We] hold that RCW 9.68A.040 requires a perpetrator to take some affirmative act that induces the minor to engage in sexually explicit conduct. A parent could be held criminally liable under subsection (c) only when the parent gives a third party express permission to sexually exploit the parent's child.

*Chester*, 82 Wn. App. at 428.

That panel also held that

[t]he Legislature did not intend that a parent could violate subsection (c) without evidence that someone violated either subsection (a) or (b). When the parent is the only actor who has induced the conduct of the minor, that parent can be convicted only under RCW 9.68A.040[(1)](a) or (b).

*Chester*, 82 Wn. App. at 429.

The *Chester* court found that because there was no causal link between the defendant's actions and his stepdaughter's actions, there was no evidence that Chester had induced his stepdaughter's behavior in any way or given permission to someone else to do so. *Chester*, 82 Wn. App. at 430. On review, our Supreme Court affirmed the reversal of the conviction and further explained the purpose of the sexual exploitation of a minor statute:

> While "permit" may suggest passive conduct, it appears that the aim of subsection (c) of the sexual exploitation statute is to prohibit a parent from allowing a child to be exploited under subsection (a) or (b) of the statute. The language of the statute does not support a contrary interpretation. If a parent, or stepparent, were actively involved in causing the exhibition or other sexually explicit conduct, then the parent would be subject to the terms of subsection (a) or (b). We interpret RCW 9.68A.040(1)(c) to prohibit the parent's knowing failure or refusal to protect his or her child from sexual exploitation by another.

*State v. Chester*, 133 Wn.2d 15, 23-24, 940 P.2d 1374 (1997).

*Chester* is distinguishable from this case. Unlike the defendant in *Chester*, Warren took an active role in directing, ordering, instructing GMW to engage in sexually explicit conduct with his sister, and had knowledge. Warren directed GMW and GPJ to engage in sexually explicit conduct and ordered GMW to have sex with GPJ while he watched. During the first occasion, GMW testified that Warren wanted to see if the children "knew anything" about sex. 14 VRP at 2268. GMW stated that Warren told him to have sex with GPJ, instructed him on how to have sex, and stood in the room watching as the two siblings attempted to have sex. Warren was telling "[GMW] what to do and how to do it." 14 VRP at 2269. GMW stated that he attempted to follow Warren's instructions. GPJ also testified that Warren made her take off her pants and directed GMW to have sex with her, but that GMW could not get his penis in her vagina, although he did touch her vagina.

6

During the second occasion, GMW stated that Warren was mad at GPJ and told GMW "to rape his sister." 14 VRP at 2271. Warren again watched and instructed GMW to put his penis into GPJ and how to "hump her." 14 VRP at 2271. After telling GMW to stop, Warren complained that GMW did not do it right and punched him. GPJ also testified that the second time was very similar to the first time, Warren was in the room and was directing GMW to have sex with her. She again testified that GMW's genitals touched her vagina but that "it did not go inside her." 13 VRP at 2039-40.

Warren's actions caused GPJ to be a victim of a sexually explicit action by GMW. Thus, Warren took active steps that induced his two minor children to engage in sexually explicit conduct. Viewing the evidence and all reasonable inferences in the light most favorable to the State, a rational trier of fact could find that Warren's actions gave GMW permission to violate RCW 9.68.040(1)(b) by causing GMW to engage in sexually explicit conduct with GPJ. Because Warren ordered GMW to violate subsection (b), a rational trier of fact could find that Warren is liable under subsection (c). Thus, sufficient evidence was presented at trial to support the convictions for two counts of the sexual exploitation of a minor, counts IV and V, and thus, we hold that his argument challenging the sufficiency of the evidence fails.

C. LIVE PERFORMANCE

Warren next argues that his actions to direct, order, and instruct GMW to have sex with GPJ while he watched does not meet the statutory definition of a "live performance." We disagree.

RCW 9.68A.011(6) defines a "live performance" as "any play, show, skit, dance, or other exhibition performed or presented to or before an audience of one or more, with or without consideration." In *State v. Wissing*, Division One held that the defendant's request that a minor

show his pubic hair did not fit the definition of "live performance."[2]  66 Wn. App. 745, 753, 833 P.2d 424 (1992).  Division One also held that the phrase "other exhibitions"

> connotes a type of performance similar in nature to those terms immediately preceding it in the statute, *e.g.*, play, show, skit, or dance.  Indeed, if the term "exhibition" was intended to impart a meaning different from or independent of "play, show, skit, or dance", then use of the word "other" immediately preceding "exhibition" would be superfluous.  Moreover, if we were to interpret "exhibition" as including the type of private request here, there would be no ascertainable standard for determining what kinds of conduct constitute an exhibition.

*Wissing*, 66 Wn. App. at 753.

Unlike the defendant in *Wissing*, here, Warren directed, ordered, and instructed GMW how to have sex with GPJ.  Warren instructed the children on what exactly they should do, and ordered GMW to have sex with GPJ.  He then watched them on both occasions.  Warren's actions are akin to a "play, show, or skit" or a "live performance" in which he is acting as both the audience and the director of the act.  Thus, when viewed in the light most favorable to the State, sufficient evidence was presented for a rational trier of fact to find that the element of a live performance as defined under RCW 9.68.011(6) was met beyond a reasonable doubt.  Thus, because sufficient evidence was presented to support the element of a live performance, Warren's argument fails.  Therefore, sufficient evidence was presented to support the convictions on both counts of the sexual exploitation of a minor. [3]

---

[2] The *Wissing* court cites the former RCW 9.68A.140(3) which defined "live performance." *Wissing*, 66 Wn. App. at 752.  The legislature has since recodified the definition into RCW 9.68A.011(6).  However, the definition remains the same.

[3] Warren also cites *State v. Wheeler*, 193 Wn. App. 1013, 2016 WL 1306132, *review denied* 186 Wn.2d 1005 (2016).  That case did not address the issue of what constitutes a live performance because the parties both agreed that it was not at issue.  *Wheeler*, 193 Wn. App. at 4.  Thus, *Wheeler* does not apply here.

No. 50161-9-II

We affirm the convictions.

A majority of the panel having determined that this opinion will not be printed in the
Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,
it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

BJORGEN, J.